

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER MADDEN, ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 08 C 6623 |
| v. ) | |
| ) | The Honorable William J. Hibbler |
| ) | |
| CORINTHIAN COLLEGES, INC., CORINTHIAN ) | |
| SCHOOLS, INC. D/B/A OLYMPIA COLLEGE, ) | |
| AND JACK D. MASSIMINO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Roger Madden and James Alexander worked as Admissions Representatives for Corinthian Colleges at its Chicago Loop campus. According to Madden and Alexander, Corinthian frequently required them to work in excess of 40 hours per work week but discouraged them from reporting the full extent of the hours that they worked. Madden and Alexander have sued Corinthian for violating the Fair Labor Standards Act, and now seek conditional certification to allow others to opt into a collective action.

Corinthian provides post-secondary education for profit. It operates more than 100 campuses within the United States and Canada and offers short-term diplomas in numerous career fields. At each of its campuses, Corinthian employs Admissions Representatives. Corinthian's Admissions Representatives do not serve in the same capacity as Admissions Representatives at not-for-profit post-secondary institutions. Instead, Admissions Representatives at Corinthian work in a "high-pressure sales environment," where advancement is determined in part by enrollment goals. (Madden Decl. ¶¶

5-7; Alexander Dep. pp. 88-93; Alexander Dep. Ex. 11). In other words, rather than evaluate prospective students' qualifications for admission, Corinthian Admissions Representatives "sell" the college's services to interested students, and their salary and advancement is tied to the number of "starts" each Representative sells. Each Admissions Representative reports to a Director of Admissions (DOA), who must approve any reported overtime.

Corinthian set forth its policies governing overtime in its employee handbook. Corinthian informed employees that it may require employees to work overtime or unscheduled hours, but told employees that it would pay them for hours worked "in accordance with all legal requirements." (Madden Dep., Ex. 6). Each Admissions representative completed a time sheet and submitted it to the DOA, who reviews the time sheets for accuracy before approval. (Carnagey Decl.).

According to Madden and Alexander, DOAs at the Chicago Loop Campus discourage Admissions Representatives from reporting overtime, using a "threatening tone," and stating that "overtime is not authorized." (Madden Decl. ¶ 7; Alexander Decl. ¶7). Consequently, Madden and Alexander aver that they frequently worked in excess of 40 hours per week but did not receive compensation because the DOA pressured them to work "off the clock." Madden and Alexander seek to certify a collective action comprised of current and former Admissions Representatives who worked between November 19, 2005 and the present and who did not receive earned overtime compensation for at least one pay period.

Section 216(b) of the Fair Labor Standards Act authorizes collective actions by representative plaintiffs. 29 U.S.C. § 216(b). Collective actions under § 216(b) of the FLSA differ from Fed. R. Civ. P. 23 class actions in that potential participants in a FLSA collective action must join the action by "opting-in" as opposed to potential class members in a Rule 23 class action who remain members of

2

the class unless they "opt out." 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); Fed. R. Civ. P. 23. District courts have the discretion to implement § 216(b), including the discretion to supervise the notice process. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169-170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). Neither the Supreme Court nor the Seventh Circuit, however, has set forth the procedure courts should employ to decide certification and notice issues. *Id.*; *see also Howard v. Securitas Sec. Servs., USA, Inc.*, No. 08 C 2746, 2009 WL 140126, at * 1 (N.D. Ill. Jan 20, 2009); *Russell v. Illinois Bell Telephone Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008). Further, the FLSA and its implementing regulations do not define the term "similarly situated." *See Howard*, 2009 WL 140126, at *1; *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004).

Against this backdrop, courts in this circuit generally have followed a two stage approach to certification in FLSA collective actions. *See, e.g., Howard*, 2009 WL 140126, at *1-2; *Russell*, 575 F. Supp. 2d at 933; *Sjoblom v. Charter Communications, Inc.*, 571 F. Supp. 2d 961, 967-69 (W.D. Wis. 2008); *Jirak v. Abbott*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008); *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007); *Mares v. Caesers Entm't, Inc.*, No. 4:06-cv-0060-JDT-WGH, 2007 WL 118877, at *2-3 (S.D. Ind. Jan. 10, 2007; *Mielke*, 313 F. Supp. 2d at 762. In the first stage, plaintiffs must demonstrate that there are similarly situated employees who are potential claimants. *Mielke*, 3131 F. Supp. 2d at 762. During this stage, courts employ a "lenient interpretation" of the term "similarly situated" and require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001); *see also Howard*, 2009 WL 140126, at * 2

3

(quoting *Thiessen*, 267 F.3d at 1102); *Russell*, 575 F. Supp. 2d at 933; *Jirak*, 566 F. Supp. 2d at 848 (quoting *Thiessen*, 267 F.3d at 1102). If a plaintiff makes the requisite showing, the court may allow notice of the case to be sent to the similarly situated employees, who then can elect to opt in as plaintiffs, and also allow discovery related to the merits of the plaintiffs' claims. *Howard*, 2009 WL 140126, at *2; *Russell*, 575 F. Supp. 2d at 933; *Jirak*, 566 F. Supp. 2d at 848.

In the second stage, following the completion of the opt-in process and merits-related discovery, the defendant may ask the court to reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis. *Howard*, 2009 WL 140126; *Jirak*, 566 F. Supp. 2d at 848. At this stage, the court reviews several factors including the employment settings of the individual plaintiffs, defenses available to the defendant that may be individual to each plaintiff, and fairness and procedural considerations. *Howard*, 2009 WL 140126, at * 2 (citing *Thiessen*, 267 F. 3d at 1103).

Corinthian first argues that the Plaintiffs have not put forward sufficient evidence of an unlawful common policy or plan. Corinthian argues that the "only 'common policy or plan' relating to overtime pay" is its Working Hours and Overtime Pay policies and there was nothing "unlawful" about its policy. This argument makes little sense. The Plaintiffs do not argue that Corinthian's overtime policy was unlawful on its face, but rather that Corinthian did not follow its own policy and instead followed an unwritten de facto policy. Just as explicit admissions of discriminatory conduct are rare, *see Darchak v. City of Chicago Bd. Of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009), employers are unlikely to put admittedly unlawful policies into writing. Courts in this district regularly allow Plaintiffs to pursue collective actions under the FLSA where they allege that an employer has an unwritten policy requiring its employees to perform uncompensated work "off the clock." *See, e.g., Howard*, 2009 WL 140126,

at * 1 (plaintiffs alleged employer required them to complete training, maintain uniforms, and work before and after shifts off the clock); *Russell*, 575 F. Supp. 2d at 932 (plaintiffs alleged employer required work during meal and rest breaks); *Heckler*, 502 F. Supp. 2d at 779 (plaintiffs alleged that employer required work at home on weekends and even manually edited employee time records if overtime was 'unapproved'). The simple fact that Corinthian's Working Hours and Overtime Pay policy is lawful on its face does not insulate them from collective actions where plaintiffs provides evidence of a common policy of not paying for overtime. *Russell*, 575 F. Supp. 2d at 935.

Corinthian next argues that Plaintiffs lack a factual nexus between themselves and the proposed participants. Corinthian constructs this argument by pointing to what it perceives as differences between Madden and Alexander and the prospective participants. For example, Corinthian suggests that the Admissions Representatives had differing enrollment goals and worked different hours. However, plaintiffs in an FLSA collective action need not demonstrate that prospective participants have *identical* positions or job responsibilities. *Russell*, 575 F. Supp. 2d at 937 (noting that not all courts require plaintiffs even to demonstrate that collective action participants perform the same type of duties); *Jirak*, 566 F. Supp. 2d at 848. The fact that some Admissions Representatives may have worked fewer overtime hours than Madden or Alexander speaks only to the amount of potential damages, and not to whether the Admissions Representatives were subject to a similarly plan or policy. In fact, courts in this district have conditionally certified off-the-clock collective actions where the proposed participants had different job titles and worked at different locations. *See Russell*, 575 F. Supp. 2d at 937 (conditionally certifying off-the-clock collective action to employees in four separate call centers); *Heckler*, 502 F. Supp. 2d at 781 (conditionally certifying off-the-clock collective action including a group of employees with different job functions). Corinthian also points to the affidavits

of several other Admissions Representatives who declare that they have been properly paid for the overtime that they worked. Indeed, Corinthian highlights the fact that it paid more than $30,000 in overtime wages (for over 550 hours of overtime) during the period in which Madden and Alexander were employed. (Def. Br. at 2,4). This argument, however, goes to the merits of the plaintiffs' claims, and not to whether the Plaintiffs are similarly situated to the prospective participants. *Howard*, 2009 WL 140126, at *8 (conditionally certifying off-the-clock collective action where defendant had raised dispute about the merits of plaintiffs' claims). Discovery may well reveal that only Madden and Alexander concluded that Corinthian's communications regarding its overtime policies were "threats" to decline to approve overtime, but the Court is not in a position to make that determination based on the record before it. Instead, these are matters to be sorted out during discovery and reconsidered at the second stage of the certification process. *Howard*, 2009 WL 140126, at *7 n. 7; *Heckler*, 502 F. Supp. 2d at 780-81.

Corinthian next argus that this case would be "unmanageable" as a collective action. Corinthian seems to suggest that the variations in the potential damages of the prospective participants would require "fact-intensive mini trials concerning the unique facts underpinning each individual litigant's claim." This argument merits little discussion. Plaintiffs limit the notice of the collective action to Admissions Representatives at the Corinthian's Chicago Loop Campus, not an unwieldy group by any conceivable definition. Variations in damages, moreover, do not warrant decertification. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 955 (W.D. Wis. 2008); *Fravel v. County of Lake*, No.2:07-cv-253, 2008 WL 2704744 (N.D. Ind. Jul.7, 2008).

Finally, Corinthian argues that no evidence suggests that other employees desire to opt in. This argument also requires little discussion. At least one court in this district has squarely rejected the

rationale that a plaintiff must produce evidence that other employees desire to join the collective action. *Heckler*, 502 F. Supp. 2d at 780. Doing so would require plaintiffs attorney's to send informal notice or otherwise solicit prospective plaintiffs—a process that would undermine courts' ability to supervise the notice of the collective action (a power which, ironically, Defendants request the Court exercise). *Id.*

At the end of the day, Madden and Alexander have put forward their affidavits that Corinthian engaged in an informal, unwritten policy of intimidating its employees into recording less overtime than they actually worked. Other courts have relied on affidavits from named plaintiffs to conditionally certify an off-the-clock collective action, even when defendant disputes such evidence with its own affidavits. *Howard*, 2009 WL 140126 at *7. Madden and Alexander have put forth evidence to demonstrate that a common policy or plan that, if proven, affects the proposed group and provides the "factual nexus" between prospective participants.

The Court therefore conditionally certifies a collective action to include:

> All current and former employees of Corinthian Colleges, Inc. and Corinthian Colleges, Inc. doing business as Olympia College Education, Inc. and Jack D. Massimino who were/are employed as Admissions Representatives at the Olympia College or Everest College Chicago Loop Campus and worked as an Admissions Representative at that campus anytime between November 19, 2005 and the present and who did not receive earned overtime compensation for at least one pay period within that time frame.

The Court, however, does not authorize Plaintiffs to issue notice at this time. Instead, the Parties shall submit, on or before January 7, 2010, a joint proposed notice that set forth the definition of the group in this collective action, the process by which a prospective participant can opt in, the date by which prospective participants must opt in, and any other relevant information about

prospective participants' legal rights and remedies. If the Parties cannot agree upon a joint notice, then they must submit competing proposed notices on or before January 7, 2010.

IT IS SO ORDERED.

12/8/09
Dated

Wm. J. Hibbler
Hon. William J. Hibbler
U.S. District Court